UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PEDRO J. PEREZ,**

       **Plaintiff,**

**v.**                                       **Case No:   6:14-cv-596-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OF DECISION

Pedro J. Perez (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Social Security Disability Insurance ("SDI") benefits and Supplement Security Income ("SSI"). Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to demonstrate good cause, supported by substantial evidence, for giving "selective weight" to the opinions of Claimant's treating orthopedic surgeon, Dr. Craig R. Stirrat. Doc. No. 19 at 5-12. For the reasons that follow, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

**I.**       **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At

> step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II.     **STANDARD OF REVIEW**.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835,

837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

III.   **ANALYSIS.**

At the center of this dispute is the ALJ's handling of the opinion evidence from Claimant's treating orthopedic hand surgeon, Dr. Charles J. Stirrat. Doc. No. 19 at 5-13.[1] The Claimant argues that the ALJ failed to demonstrate good cause, supported by substantial evidence for giving "selective weight" to Dr. Stirrat's opinions. Doc. No. 19 at 11-12. The Commissioner maintains that the ALJ's decision, with respect to Dr. Stirrat's opinion, is supported by substantial evidence because the "ALJ explained that he gave Dr. Stirrat's opinion that [Claimant] had extremely limited use of his left hand great weight and limited [Claimant] to only occasional use of the left extremity, including occasional fingering and handling." Doc. No. 20 at 8.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In cases like this one, involving the ALJ's handling of such medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Commissioner of Social Security*, 533 F. App'x. 929, 931 (11th Cir. Aug. 14, 2013) (unpublished).[2] In *Winschel v.*

---

[1] The Claimant also argues that the ALJ erred with respect to the handling of opinions from a consultative examining physician and psychologist, in determining Claimant's mental residual functional capacity, and by posing a hypothetical question to the vocational expert that did not include all of Claimant's limitations. Doc. No. 19 at 13-21.

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The Eleventh Circuit has held:

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) (unpublished) (quoting *Phillips* v. *Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). Thus, good cause exists to give a treating physician's opinion less than substantial weight where the ALJ demonstrates in the decision that the physician's opinion is not bolstered by the evidence in the record, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Id*.

On July 17, 2006, Claimant injured his non-dominant, left forearm while moving a windowpane at work. R. 372. Other than the impairments and limitations resulting from this injury, Claimant has no other severe physical impairments. R. 136 ("The claimant's primary limitation flows from the residual effects of an injury he sustained to his left forearm in 2006.").

---

2.

Claimant's left hand "broke through a door windowpane when the door slipped as he was loading [sic] on to the truck." R. 372. On July 20, 2006, Claimant began treating with Dr. Stirrat, who diagnosed laceration of left volar forearm with presumed laceration of ulnar artery, ulnar nerve, flexor tendons to ring and little fingers. R. 372-375. At that time, Dr. Stirrat stated that while it was "too early" to tell, Claimant "will have some degree of permanent impairment because it is highly unlikely that he will have full recovery from the never repair." R. 375. Dr. Stirrat has provided the majority of Claimant's treatment for his left hand impairment. R. 136 (ALJ's decision noting the same); R. 344-398, 509-521.

On September 18, 2012, Dr. Stirrat's treatment records provide: Claimant presents in an agitated and distressed mood; he can make a good fist; long flexor strength feels fairly close to normal; Claimant can initiate spreading of fingers, but does not have any resistance power; Claimant does not have a claw deformity; he cannot cross his fingers; he has a sense of touch; grip strength is 50kg on the right, but only 18kg on the left; key pinch on the right is 9 kg, but only 3kg on the left with a positive Froment's sign, which is indicative of nerve palsy. R. 519. Dr. Stirrat states that Claimant's major issue is nerve pain related to temperature changes, both cold and hot, with "complex regional pain syndrome type II related to ulnar nerve laceration left forearm." R. 519. Dr. Stirrat opines:

> [Claimant] does not have the ability to do any of the physical labors that he was doing at the time he was injured. He has ongoing nerve pain in the hand that has not been treated. His nerve pain has caused psychological problems. I believe he does need medication management for his nerve pain and psychological issues. <u>He is unable to work at the present time using the left hand. I believe the nerve and tendon repair result has been adequate in that he does not have claw hands but with the altered sensibility, temperature intolerance and exertional pain, his ability to use his left hand is extremely limited.</u> I believe he needs psychological support for his stress related to his to [his] left upper extremity injury.

R. 519 (emphasis added).  Thus, Dr. Stirrat opined that due to Claimant's "altered sensibility, temperature intolerance and exertional pain," Claimant's "ability to use his left hand is extremely limited," which renders Claimant "unable to work at the present time using the left hand."  R. 519.

On October 6, 2012, Dr. Stirrat completed a Massachusetts Department of Transitional Assistance EAEDC Medical Report.  R. 509-518.  Therein, Dr. Stirrat states that he has treated Claimant since July 21, 2006 for left ulnar nerve and tendon lacerations, left hand nerve pain, temperature intolerance, dysesthesia, weakness, and exertional pain.  R. 512.  Due to left ulnar nerve palsy with intrinsic weakness, Dr. Stirrat states that Claimant's grip strength is 18kg in left hand, and key pinch of 3 kg with protective sensation; Claimant has agitated mental status and dysesthesia in left ulnar nerve distribution.  R. 513.  Dr. Stirrat opines that Claimant's condition is chronic and no improvement is expected.  R. 513.  Dr. Stirrat opines that Claimant's impairments affect his ability to engage in the following activities: personal hygiene and dressing; ordinary housework; food shopping; driving and using a computer.  R. 517.

At the hearing before the ALJ, Claimant was asked by the ALJ whether Claimant can put his left hand over his head and the Claimant testified that he could, but "[a]fter a while I start feeling like going numbness."  R. 37.  Claimant further testified:

> I still feel my arm, my wrist.  There's a lot of clicking in there.  It feels like, I feel everything is just building up in there because I haven't been using it much and after a while and it's basically the cold and what I can pick up and what I can grab.  You know, I don't feel the pinky and I don't feel half of this finger.

R. 37.  Claimant stated that he has a "lot of tingling sensation [and] numbness" from the tips of the fingers all the way to the cuff.  R. 37.  The ALJ asked Claimant whether he could hold a gallon of milk, which weighs less than 10 pounds, and the Claimant testified that he "could use [his] two fingers and hold it for a while," but at "a certain point though I can't hold it out like an

hour just normal, you know." R. 38. Claimant further testified that he could "maybe" lift "ten pounds for a short period of time." R. 39.

In the decision, the ALJ found that Claimant retains the residual functional capacity (the "RFC") to perform light work, except that: "the claimant could only occasionally use the left upper extremity and could only occasionally perform fingering and handling with the left upper extremity, his non-dominant hand; the claimant must avoid concentrated exposure to extreme heat or extreme cold; and the claimant is limited to unskilled work." R. 135. An individual who can perform light work, must have the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). An individual who is limited to performing an activity occasionally is able to do it "from very little to up to one-third of the time" in an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5. Thus, the ALJ's RFC set forth above necessarily includes a finding that Claimant can use his left upper extremity up to one-third of the workday to lift up to 20 pounds. R. 135.

The ALJ states the following with respect to Dr. Stirrat and his opinions:

> <u>Between February 2010 and September 2012, Dr. Stirrat's treatment notes document a worsening in the claimant's functioning with his left hand</u>. In February 2010, although the claimant still suffered from some reduced grip strength in his left hand and tenderness to palpitation, he displayed excellent range of motion with almost full extension and could make a good fist with his left hand (2F/3). <u>In October 2011, the claimant's condition had deteriorated</u>, with the Dr. Stirrat noting significant heat and cold intolerance as well as clicking in the claimant's wrist. While the claimant's range of motion in his wrist appeared to be fine, the claimant suffered from demonstrated paresthesisas in his left hand as well as audible clicking in his wrist. By September 2012, while the claimant continued to be able to make a good fist, the claimant had no resistance power when spreading the fingers of his right [sic] hand, reported pain in his forearm with exertion, and displayed greatly reduced grip strength in his left hand compared to his right. <u>These treatment records document a definitive worsening in the claimant's left hand functioning from February 2010 through</u>

> September 2012; however, these notes give little insight into the claimant's specific functional limitations due to the residual effects of this impairment.
>
> Within these treatment notes, Dr. Stirrat does refer to the claimant as "disabled" because of this impairment; however, he does not provide further details regarding the claimant's specific functional limitations. For example, in October 2011, Dr. Stirrat stated that although the claimant has regained good motion and intrinsic function form the nerve repair, he is disabled by his dysesthetic nerve pain and cold intolerance. Dr. Stirrat does not outline the claimant's limitations on a function by function basis as they relate to his left upper extremity pain nor does he take into account the possibility that the claimant may be some jobs [sic] that the claimant could perform despite suffering from significant functional limitations due to his left upper extremity. Similarly, <u>in September 2012, Dr. Stirrat states that the claimant's altered sensibility, temperature intolerance, and exertional pain, made his ability to use his left hand extremely limited. Although it is vague, the [ALJ] generally concurs with this assessment and has limited the claimant to only occasional use of the left upper extremity, occasional fingering, and occasional grasping.</u> The [ALJ] also concurs with Dr. Stirrat's assessment that the claimant could not return to his past work. However, the <u>[ALJ] does not agree with Dr. Stirrat's assessment that the claimant could not work at the present time using his left hand, as this complete prohibition is too restrictive based on the overall weight of the evidence of record, including the claimant's testimony regarding his retained capabilities in his left hand. Therefore, the undersigned gave Dr. Stirrat's assessment selective weight (as discussed above) when analyzing the claimant's residual functional capacity.</u>

R. 136-137 (emphasis added). Thus, the ALJ gives Dr. Stirrat's opinions "selective weight" in following resects: (1) the ALJ agrees with Dr. Stirrat's opinions that Claimant's left hand functioning is worsening, Claimant's condition results in extreme limitations and Claimant cannot perform his past relevant work; and (2) the ALJ does not agree with Dr. Stirrat's opinion that Claimant's left upper extremity limitations preclude Claimant from all work with the left hand based upon "the overall weight of the evidence of record," and the Claimant's testimony. R. 136-37.

With respect to Claimant's testimony, the ALJ states:

- 8 -

> The claimant's testimony regarding the retained functional abilities in his left hand support restricting the claimant to the limitations found within the [RFC]. At the hearing, the claimant testified that he can place his left hand over his head, only stating that he suffers from numbness "after a while." In addition, while the claimant does feel some clicking in his wrist if holding his arm out straight, the claimant that he could still lift a gallon of milk with his left hand and could probably hold it for a while. This testimony provides support for limiting the claimant to occasional use of his left arm, occasional grasping, and occasional fingering, particularly if limited to light work, but not for further limitations.

R. 137. Thus, the ALJ finds that the Claimant's testimony set forth above conflicts with Dr. Stirrat's opinion and supports the ALJ's ultimate RFC. R. 137. For the reasons set forth below, the Court finds that the ALJ failed to demonstrate good cause, supported by substantial evidence, to reject a portion of Dr. Stirrat's opinion and, furthermore, that the ALJ's RFC is not supported by substantial evidence.

Other than Dr. Stirrat, the record contains the following evidence related to Claimant's left hand impairment: (1) an April 14, 2012 opinion from a consultative examining physician, Dr. Nagagopal Venna (R. 469-71); (2) a July 6, 2011 opinion from a non-examining physician, Dr. John Jao, at the initial agency decision level (R. 83-84); and (3) an April 20, 2012 opinion from a non-examining physician, Dr. Barbara Trockman, at the agency reconsideration level (R. 108-110).

Dr. Venna's exam revealed "clawing of the fifth and fourth fingers," decreased sensation, weak finger abduction, normal thumb movements, and normal extension of the left upper extremity. R. 470. Dr. Venna opined that:

> [Claimant] has clear symptoms and signs of ulnar nerve injury with sensory motor dysfunction . . . as well as development of regional pain syndrome with casualgia symptoms. The combination of symptoms, persistence of the pain over the last six years severely interferes with his ability in the use of the hand in gripping, grasping, or carrying weight. He also developed regional pain syndrome or casualgia, which further decreases the use of left upper limb as a

> whole. . . . The persistence of the symptoms, six years after the injury and repair, makes it probable that these impairments are permanent.

R. 470. Thus, as the ALJ notes in the decision (R. 138), Dr. Venna's opinion is consistent with Dr. Stirrat's opinion. *Compare* R. 470 *with* R. 509-519. In the decision, the ALJ only gives "some weight" to Dr. Venna's opinion because the opinion "does not identify the exact extent of [Claimant's] limitations," and because Claimant's testimony (*see supra* pp. 6-9) "clearly demonstrate[s] that he retains at least some ability to use his left arm and left hand in a limited capacity." R. 138.

Dr. Trockman opines that Claimant's hand impairments result in the following limitations: the ability to lift and carry a maximum of 10 pounds occasionally and less than 10 pounds frequently; limited in pushing or pulling with left upper extremity; and limited in all areas of manipulation with left upper extremity, including handling and fingering. R. 108-109. Ultimately, Dr. Trockman opines that Claimant is limited to sedentary level work. R. 111. The ALJ gives Dr. Trockman's opinion only "some weight" based on Claimant's testimony, which the ALJ states leads to the conclusion that Claimant "could perform the lifting requirements of light work, rather than merely sedentary work." R. 138.

Dr. Jao opined that Claimant can perform light work and has no manipulative limitations. R. 83-84. In the decision, the ALJ give's Dr. Jao's opinion "less weight" because "it is inconsistent with the evidence received at the hearing level, which shows a noticeable level of dysfunction in the claimant's left hand." R. 138. Thus, all of the medical opinion evidence of record, except Dr. Jao's opinion, which the ALJ gave little weight, found that the Claimant has greater limitations than the limitations found by the ALJ in the RFC. *Compare* R. 135 *with* R. 108-111, 470, 509-519.

As set forth above, the ALJ provides two reasons for not agreeing with Dr. Stirrat's opinion

that Claimant could not utilize his left hand in working: (1) the "overall weight of the evidence of record"; and (2) the Claimant's testimony. R. 137. The ALJ's stated reasons for not agreeing with Dr. Stirrat's opinion are not supported by substantial evidence. With respect to the first reason, that Dr. Stirrat's opinion is contrary to the overall weight of the evidence, conclusory statements that an opinion is inconsistent with or not bolstered by the medical record as a whole are insufficient to show an ALJ's decision is supported by substantial evidence. *See Anderson v. Astrue,* No. 3:12-cv-308-J-JRK, 2013 WL 593754, at *5 (M.D. Fla. Feb. 15, 2013) (ALJ must do more than recite a good cause reason to reject treating physician opinion and must articulate evidence supporting that reason) (citing authority); *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required."). In this case, the ALJ's finding is wholly conclusory and insufficient, in and of itself, to meet the good cause standard. R. 137. Moreover, as set forth above, the only other physician who examined Claimant and offered an opinion with respect to Claimant's hand limitations, Dr. Venna, essentially agreed with Dr. Stirrat's opinion. *Compare* R. 470 *with* R. 509-519. Therefore, contrary to the ALJ's statement, the overall weight of the evidence favors a more restrictive RFC than that found by the ALJ. In fact, as discussed below, no medical evidence in the record supports the RFC finding by the ALJ.

With respect to the ALJ's second reason, *i.e.*, that Dr. Stirrat's opinion is contrary to Claimant's testimony, the Court finds that it is not supported by substantial evidence. *Compare* R. 509-519 *with* R. 37-39. *See also* R. 137-138 (ALJ finding that Claimant's testimony supports

a finding that Claimant can perform the lifting requirements of light work). Claimant testified that he can hold his left hand over his head for a short period of time before it gets numb and that he can pick up and hold a gallon of milk with two fingers, but not for an hour. R. 37-39. A gallon of milk weighs less than 10 pounds and an individual who can perform light work, even if only occasionally, must be able to lift up to 20 pound occasionally and 10 pounds frequently. *See* 20 C.F.R. § 404.1567(b). Thus, an individual's ability to lift and hold a gallon of milk for a short period of time is not an admission that the individual can perform light work. Moreover, even when factoring in the ALJ's limitation to occasional use of the left upper extremity at the light exertional level, Claimant never testified that he retains the ability hold his hand over his head or lift and carry a gallon of milk consistent with the definition of occasional use – for up to one-third of the time during an eight-hour workday. R. 37-39. Therefore, nothing in Claimant's testimony supports the ALJ's RFC finding or contradicts Dr. Stirrat's opinion. *Compare* R. 37-39 *with* R. 135, 501-519. Accordingly, the ALJ's stated reasons for not agreeing with Dr. Stirrat's opinion and reaching his RFC finding are not supported by substantial evidence.

The preceding discussion illustrates an additional, critical error by the ALJ. While the RFC assessment is reserved to the ALJ, 20 C.F.R. § 404.1546(c), it must be supported by the substantial evidence. *See* 20 C.F.R. § 404.1520(e) (RFC must be based on on all the relevant medical and other evidence of record); *see also supra* p. 2. In this case, no substantial evidence that the ALJ credited or accepted, including the Claimant's testimony, supports the ALJ's RFC assessment that the Claimant can occasionally use his left upper extremity to perform the physical requirements of light work. *See* R. 135-138.

In *Mariani v. Colvin*, 567 F. App'x 8, 9-11 (2d Cir. July 3, 2014) (unpublished), the Second Circuit Court of Appeals confronted a similar scenario. *Id*. In *Mariani*, the ALJ found that the

claimant "retained the RFC to perform fine manipulation/fingering 50% of the time with his dominant right upper extremity." *Mariani*, 567 F. App'x at 9 (internal quotations and citations omitted). The ALJ rejected the treating physician's opinion that the claimant could not use his hand at all, and instead the ALJ found that the claimant could use the hand 50% of the time. *Id*. at 10. While the Second Circuit concluded that the ALJ's decision to reject the treating physician's opinion was supported by substantial evidence, it further determined that the ALJ's RFC was not supported by substantial evidence "because the record provides no evidence for the ALJ's specific finding that Mariani could use his dominant right hand for fifty percent of the workday." *Id*. at 10. Similarly, in this case, the ALJ has articulated no specific evidence in the record supporting the ALJ's finding that Claimant retains the ability to use his left upper extremity to perform light work up to one-third of time during the workday. R. 135-138. Accordingly, the Court finds that the ALJ's RFC is not supported by substantial evidence in the record.[3]

## IV.  CONCLUSION.

Based on the forgoing, it is **ORDERED** that:

1. The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of Section 405(g); and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

---

[3] The ALJ's error with respect to Dr. Stirrat's opinions and the RFC are dispositive of this case. *See supra* pp. 3-13. Therefore, it is unnecessary to address Claimant's remaining arguments. *See supra* n.1; *See also Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Social Sec. Admin.*, -- F. App'x --, 2015 WL 5166045, at *3 (11th Cir. Sept. 4, 2015) (unpublished) (no need to analyze other issues when case must be reversed due to other dispositive errors).

**DONE AND ORDERED** in Orlando, Florida on September 29, 2015.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record